IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DAVID RAY ADELE                                                    PLAINTIFF

V.                                                    CIVIL NO. 1:14-cv-463-JCG

PRESTON GOFF *Warden*,                                        DEFENDANTS
JOHNATHAN MORAN *Warden*, and
ERIC RICHARD *Chaplain*

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 173), GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 185), AND DENYING PLAINTIFF'S MOTIONS (ECF Nos. 176, 177, 189)

BEFORE THE COURT are Plaintiff David Ray Adele's Motion for Summary Judgment (ECF No. 173) and the Motion for Summary Judgment (ECF No. 185), filed by Defendants Preston Goff, Johnathan Moran, and Eric Richard. Plaintiff has also filed three other motions that will be resolved. (ECF Nos. 176, 177, 189). The Motions have been briefed. An omnibus and *Spears* hearing was held on April 19, 2016.[1]  Having considered the written submissions of the parties, the record, and relevant law, the Court finds that Plaintiff's Motion for Summary Judgment should be DENIED and Defendants' Motion for Summary Judgment GRANTED. Plaintiff's additional motions will also be DENIED.

## I.   BACKGROUND

Plaintiff David Ray Adele is a postconviction prisoner in the custody of the Mississippi Department of Corrections (MDOC) who is proceeding *pro se* and *in*

---

[1] *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

*forma pauperis.* Plaintiff practices Odinism, a polytheistic Norse religion that is also known as Asatru. Plaintiff claims that while he was a pretrial detainee at George County Regional Correctional Facility (GCRCF) during the three years he awaited trial, his right to freely exercise his religion was infringed. Defendant Preston Goff is the former warden at GCRCF. Defendant Jonathan Moran is the Training and Security Threat Group Coordinator at GCRCF. Defendant Eric Richard is a chaplain at GCRCF. Plaintiff now has been convicted of aggravated domestic assault and sentenced to life in the custody of MDOC without the possibility of parole. Plaintiff was transferred from GCRCF to the East Mississippi Correctional Facility (EMCF) in 2014 to serve his sentence.

Plaintiff's first complaints concern items confiscated from his cell. Defendants have offered with their Motion for Summary Judgment what they contend was confiscated. They are documents written in runes or religious symbols used in Odinism and also include drawings of a woman who Defendants represent is Plaintiff's victim. GCRCF officials deemed the runic texts to be coded writings and gang paraphernalia, both contraband under prison rules. Coded writings are deemed a security threat because they are used to communicate in secret inside and outside the facility. Runes are used by the Aryan Brotherhood and other security threat groups as a symbol of white supremacy. (ECF No. 14-2, at 7).

Because of the ongoing criminal investigation against Plaintiff, the documents, as well as Plaintiff's blood-spattered clothing and personal effects, were

turned over to Stuart Fairchild, a deputy with the George County Sheriff's Office. (ECF No. 185-2, at 83; ECF No. 185-3, at 1). A criminal intelligence unit was able to partially translate the writings. According to Detective Fairchild, the translations revealed continuing threats to Plaintiff's victim and admissions regarding the aggravated domestic assault. The runic texts however were excluded from Plaintiff's criminal trial because they were not fully translated, and the Court deemed them inadmissible character evidence, hearsay, and unduly prejudicial. (ECF No. 173-1).

Plaintiff submits that the runic scripts that Defendants produced in discovery and that were addressed at Plaintiff's criminal trial are not the only documents that were confiscated from him. Plaintiff states:

> Runes are not the issue. The runic script confiscated, which is now used as "discovery" is not Adele's religious literature. The religious Havamal and Edda were type print plain English and have disappeared. . . . Coded literature is not the issue. Not a policy pertaining to this matter. Disappearing documents is the policy before this court.
> . . .
> Plaintiff's claim is that defendants confiscated and kept his religious literature Havamal and Edda. This claim stands true to date. Defendants have yet to produce the Havamal and Edda, confiscated between 2012-2013. The discovery produced thus far is not even religious literature. Defendants confiscated and discarded Plaintiffs' religious literature and now pretend the runic script is all they took Aug 2012-2013.

(ECF No. 197 at 3).

Plaintiff testified at the omnibus hearing that the Havamal is a portion of the Poetic Edda and its significance in Odinism is comparable to the book of Proverbs to

Christianity. (ECF No. 185-1, at 17). Plaintiff maintains that a Thor's hammer medallion on a cord that he uses for rituals, as well as some of his legal papers, were also confiscated.

Plaintiff's next complaints concern Eric Richard, one of GCRCF's chaplains. Plaintiff maintains that it was unconstitutional for Chaplain Richard to withhold indigent hygiene supplies to Plaintiff unless Plaintiff attended two church services a month. Plaintiff alleges that Chaplain Richard refused to allow Odinists to have religious services. He alleges that Chaplain Richard refused to accommodate his request for a Yule feast, consisting of pork and mead, or a substitution of honeyed water for mead, during the twelve days of Yule, a high holiday of Odinism.

Plaintiff seeks the return of his Havamal and hammer medallion. He requests an injunction to require GCRCF to make Odinist religious texts available in the canteen and through a chaplain as he asserts is available for more common religions. Plaintiff seeks six million dollars in monetary damages.

## II.   DISCUSSION

### A.   <u>Legal Standards</u>

#### 1.   **Summary Judgment**

Federal Rules of Civil Procedure 56 provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not, however, support the motion with materials to negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's' claim. *Id.* at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

It is improper for the court to "resolve factual disputes by weighing the conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper if the court merely believes it unlikely that the non-moving party will prevail at trial. *Nat. Screen Serv. Corp. v. Poster Exch. Inc.,* 305 F.2d 647, 651 (5th Cir. 647).

## 2.    The Prisoner Litigation Reform Act

Because Plaintiff is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the United States Code), applies and provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. §1915(g).

Plaintiff has two "strikes" under the PLRA. He received a strike on January 1, 12, 2015, in *Adele v. King*, No. 1:14-cv-449-LG-RHW (S.D. Miss. Jan. 12, 2015) where his claims were dismissed as frivolous. Plaintiff's appeal of the judgment in *King* was dismissed for want of prosecution because Plaintiff failed to timely file a brief.

Plaintiff received his second strike on June 5, 2015, in *Adele v. Rogers,* No. 1:14-cv-448-HSO-JCG (S.D. Miss. June 5, 2015). Plaintiff's denial of access to courts claim was deemed frivolous and his religious claims dismissed as duplicative of the ones he raises in this case, making them malicious. On appeal, the judgment in *Rogers* was affirmed as modified.

If Plaintiff accumulates three strikes, he is barred from proceeding *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

**B.**   <u>**Analysis of Plaintiff's Claims**</u>

**1.**   **Damages**

As an initial matter, Plaintiff may not recover the six million dollars he seeks

because he has not suffered a physical injury. The PLRA provides:

> No Federal civil action may be brought by a prisoner
> confined in a jail, prison, or other correctional facility, for
> mental or emotional injury suffered while in custody
> without a prior showing of physical injury or the
> commission of a sexual act (as defined in section 2246 of
> Title 18).

28 U.S.C. § 1997e(e).

"Section 1997e(e) applies to all federal civil actions in which a prisoner

alleges a constitutional violation, making compensatory damages for mental or

emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers,* 404

F.3d 371, 374-75 (5th Cir. 2005). Plaintiff's request for compensatory damages is

barred by 28 U.S.C. § 1997e(e). Also, the Religious Land Use and Institutionalized

Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, does not permit damages against

defendants in their individual capacities. *Sossamon v. Lone Star State of Tex.,* 560

F.3d 316, 331 (5th Cir. 2009).

Section 1997e(e)'s bar does not apply to declaratory or injunctive relief.

*Herman v. Holiday,* 238 F.3d 660, 665 (5th Cir. 2011). But, because Plaintiff has

been transferred from GCRCF to East Mississippi Correctional Facility, Plaintiff's

claims for declaratory and injunctive relief are moot. *Id.*; *see Oliver v. Scott,* 276

F.3d 736, 741 (5th Cir. 2002). For these reasons, Plaintiff's claims for compensatory

damages, declaratory, and injunctive relief should be dismissed with prejudice.

### 2.    Qualified Immunity

Defendants have asserted the defense of qualified immunity. Qualified immunity applies to officials sued in their individual capacities for money damages. It does not protect municipalities or officials sued in their official capacities, and it does not apply to claims for injunctive relief. Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206 (2001). Qualified immunity protects officials unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 817-18 (1982). It focuses on "the objective unreasonableness of an official's conduct, as measured by reference to clearly established law," rather than the official's motives or other aspects of his state of mind. *Id.* at 818.

Qualified immunity "shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [the officer] confronted." *Brosseau v. Haugen,* 543 U.S. 194, 197 (2004). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011) (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

### 3.    Confiscation of Documents from Plaintiff's Cell

Plaintiff contends that the confiscation of a religious text from his cell violated the First Amendment. Defendants assert that the documents confiscated were not religious.

Prison inmates do not lose their First Amendment right to free exercise of religion by virtue of their confinement. "[R]easonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." *Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972). Prison officials may place reasonable limits on prisoners' religious rights. *Davis v. Davis,* 826 F.3d 258, 265 (5th Cir. 2016).

Prison regulations that impinge on fundamental constitutional rights are reviewed under the deferential standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987). Under *Turner,* "a prison regulation that impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. *Turner* employs a four-factor test to resolve this inquiry: (1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are ready alternatives to the regulation. *Id.* at 89-91. Rationality is the controlling factor. *Mayfield v. Tex. Dept. of Crim. Justice,* 529 F.3d 599, 607 (5th

9

Cir. 2008).

With respect to the confiscated documents that were written in runes, Plaintiff admits that the documents are not religious materials. (ECF No. 197, at 3) ("The discovery produced thus far is not even religious literature."). Plaintiff's First Amendment claim with respect to the runic scripts therefore fails and should be dismissed with prejudice.

Defendants furthermore have offered legitimate penological reasons for why the runic texts were confiscated. Warden Fairley avers in an affidavit that "coded writings . . . are viewed as a security threat, and are often used to communicate in secret inside and outside of the facility." (ECF No. 185-2, at 1). He attests that the "coded writings in Plaintiff's possession contained runes and/or symbols which are known symbols of a gang and/or group of inmates that has been labeled a Security Threat Group ("STG"), which represent constant security concerns." (ECF No. 185-2, at 1). Defendants' rules prohibiting coded writings and gang paraphernalia are rationally related to the legitimate penological interest of security. *Turner,* 482 U.S. at 89-90. They are facially neutral and Plaintiff has not shown a disparate application. *Mayfield,* 529 F.3d at 608-609. The rules satisfy *Turner*.

Plaintiff, however, submits that he is not complaining about runic scripts. He alleges that his Havamal was confiscated despite not being contraband. According to Plaintiff, his Havamal was a 24-page booklet "written in plain English," not runic text. (ECF No. 14-1, at 1; ECF No. 197, at 3). Plaintiff submits that "Defendants

10

confiscated and discarded Plaintiff's religious literature and now pretend the runic script is all they took Aug 2012-2013." (ECF No. 197, at 3). Defendants have not addressed Plaintiff's argument that the Havamal was not written in runic script and thus was not contraband.

Assuming that the Havamal was not contraband, Plaintiff has not supported with authority his position that taking his Havamal during a shakedown was a violation of clearly established constitutional rights, or that it was done with deliberate indifference to Plaintiff's religious rights. Plaintiff repeatedly states that the Havamal was "lost" or "discarded." (ECF No. 185-1, at 19, 22-23, 34, 52-53, 65). An incident report written by Officer J. Martinez indicates that Martinez returned to Plaintiff "what [he] thought was gang paraphernalia" because he later learned that Plaintiff practiced Odinism and that it was "a religious text." (ECF No. 173-1, at 1). Plaintiff has not responded to this report indicating that religious literature was returned to him. Assuming the Havamal should not have been confiscated, qualified immunity gives ample room for mistaken judgments. Plaintiff has not overcome the qualified immunity defense.

There is furthermore no Fourteenth Amendment due process violation when a government actor negligently deprives an individual of property, so long as there is an adequate post-deprivation remedy. A negligent action alone cannot form the basis of a Fourteenth Amendment property deprivation. *Daniels v. Williams,* 474 U.S. 327, 330-31 (1986). Even if confiscation of the Havamal was intentional, there

11

is no due process violation where the loss of property results from the intentional, but random and unauthorized act of government employees, where an adequate post-deprivation remedy exists. *Hudson v. Palmer,* 468 U.S. 517, 533 (1984). The distinction between random, unauthorized conduct and conduct pursuant to established state procedure is significant. Plaintiff has no due process claim because he had access to the prison's grievance process to seek the return of the Havamal, and the opportunity to pursue a remedy in state court. *Quick v. Hodge,* No. 2:16-cv-166-KS-MTP, 2017 WL 440261, *3 (S.D. Miss. Jan. 31, 2017) (citing *Johnson v. King,* 85 So. 3d 307 (Miss. Ct. App. 2012)); *Brown v. Johnson,* No. 2:10-cv-210-KS-MTP, 2012 WL 426258, *3 (S.D. Miss. Jan. 19, 2012).

Plaintiff alleges that the purported seizure of his Havamal also violates RLUIPA. RLUIPA provides that state and local institutions may not substantially burden a person's exercise of religion unless doing so is in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1. The Act broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* at § 2000cc-5(7)(A).

Under RLUIPA, the plaintiff bears the burden to prove the challenged law, regulation, or practice substantially burdens his exercise of religion. Once a plaintiff has made this *prima facie* showing, the defendant bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling

12

governmental interest. *Id.* at § 2000cc-2(b); *see Sossamon,* 560 F.3d at 326-27.

RLUIPA is a prohibition against *government* regulation, law, or policy. Plaintiff is not alleging that the Havamal was taken pursuant to a prison rule or policy. He is alleging that the Havamal was not contraband and should not have been taken. Plaintiff cannot sustain a RLUIPA claim under these facts because he is challenging the actions of individuals acting as individuals, and not as the government. *Garrett v. Stephens,* No. 16-40354, 2017 WL 128555, *1 (5th Cir. Jan. 12, 2017) (citing *Adkins v. Kasper,* 393 F.3d 559, 567 (5th Cir. 2004)). That some property allegedly confiscated was of a religious nature does not turn Plaintiff's claim into a RLUIPA claim. *Id.*

### 4.    Confiscation of Wooden Thor's Hammer Medallion

Plaintiff stated at the omnibus hearing that Officer Dickerson, who is not a party to this suit, confiscated a wooden Thor's hammer on a cord from Plaintiff that was two inches by two inches large. (ECF No. 185-1, at 43). In another pleading, Plaintiff stated that the hammer medallion was taken by Ronnie Pitts, who is also not a party to this suit. (ECF No. 14, at 2). Plaintiff submits that the importance of the Thor's hammer in Odinism is "[t]he same as a cross" in Christianity. *Id.* at 44. Plaintiff maintained that he used the hammer medallion in rituals as a "hallowing hammer" and "warder." (ECF No. 185-1, at 57).

Defendants have no record of Plaintiff entering GCRCF with a hammer medallion. Defendant Moran, Security Threat Group Coordinator at GCRCF, stated

in his affidavit that if a hammer medallion had been found in Plaintiff's possession, without prior authorization, it would have been considered contraband. (ECF No. 185-4, at 2, 25). Plaintiff admits that he was told by Chaplain Newbaker, who is not a defendant in this suit, that he could probably have a plastic hammer medallion if he could acquire one. *Id.* at 44, 48. Plaintiff acknowledged that, after the hammer medallion was confiscated, he made a "homemade amulet" from plastic rosary beads provided by a chaplain. *Id.* at 46.

"The pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman v. Tex. Dep't of Crim. Justice,* 369 F.3d 854, 862-63 (5th Cir. 2004). While making a homemade plastic amulet or acquiring a plastic hammer medallion may not be ideal to Plaintiff, Plaintiff has reasonable opportunities to practice his faith, while at the same time complying with prison rules against contraband. Plaintiff has not established a free exercise violation or that prison officials were deliberately indifferent to his religious rights when they confiscated his hammer medallion. Plaintiff has not met his summary judgment burden with respect to RLUIPA because a RLUIPA plaintiff must demonstrate more than an inconvenience to one's religious practices. *Smith v. Allen,* 502 F.3d 1255, 1277-79 (11th Cir. 2007). Also, Plaintiff is again challenging individual action, not governmental action. *Garrett,* 2017 WL 128555, at *1. Plaintiff has no due process claim because he had adequate post-deprivation

remedies through the prison's grievance procedures and state court remedies. *Quick,* 2017 WL 440261, at *3.

Interpreting his allegations liberally, Plaintiff may be asserting an equal protection violation because he alleges that some prisoners have religious metal jewelry like crosses that have not been confiscated, while his wooden medallion was confiscated. He has also been told by a chaplain that he cannot have a metal medallion. Plaintiff has not identified any prisoners who have been allowed to possess jewelry similar to the medallion that was confiscated from him. He has also not offered evidence that any unequal treatment stemmed from discriminatory intent. *Taylor v. Johnson,* 257 F.3d 470, 473 (5th Cir. 2001).

**5.    Request for Odinist Religious Texts**

Plaintiff alleges that his First Amendment rights were violated because he requested Odinist religious literature from Chaplain Richard but was not provided it. Chaplain Richard states in his affidavit that the library has a religious section containing donated materials. (ECF No. 185-1, at 2). Chaplain Richard responded to Plaintiff on November 12, 2014, telling him that there was not material concerning Odinism in the library. *Id.* at 3. Chaplain Richard provided Plaintiff with the only Odinist material available, which consisted of some information from the internet. *Id.* at 2. Chaplain Richard asked Plaintiff to have an Odinist volunteer advisor or minister "contact my office [so that] we can schedule a conference to discuss getting more material or visitation." *Id.* at 2.

15

According to Chaplain Richard, "all inmates, regardless of religion and/or spiritual belief, had to provide [him] with an individual who could act as an advisor regarding their religious beliefs and aid [him] to understand the individual inmate's spiritual needs . . . ." *Id.* Plaintiff has offered no evidence that he provided Chaplain Richard with an individual who could act as a volunteer Odinist minister or advisor. *Id.*

"The pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman,* 369 F.3d at 862-63. Chaplain Richard responded to Plaintiff's requests, but he was not required to provide Odinist texts to Plaintiff at government expense. A jail has no affirmative duty to provide inmates the religious texts or other reading material of their choosing. *Frank v. Terrell,* 858 F.2d 1090, 1090 (5th Cir. 1988) "There cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country." *Id.* (quoting *Cruz,* 405 U.S. at 319) (Burger, C.J., concurring). Plaintiff has not demonstrated a violation of a clearly established constitutional right. At most, if Odinist texts had been donated, then those texts could not have been denied to Plaintiff, but that is not the allegation. *Id.* The evidence does not support a finding that Chaplain Richard acted with deliberate indifference to Plaintiff's religious rights. Plaintiff has no First Amendment claim, and his RLUIPA claim fails because he is

16

challenging individual, and not government, action. *Garrett,* 2017 WL 128555, at *1.

### 6.   Request for Odinist Services

Plaintiff advances a First Amendment claim against Chaplain Richard for denying him and "a few" others Odinist church services. (ECF No. 185-1, at 37, 39). Plaintiff has offered the affidavits of two other prisoners practicing Odinism at GCRCF. (ECF No. 22-1, at 2-5; ECF No. 166, at 1). GCRCF's religious programs policy states that "[r]egular and special worship services and religious study activity schedules will be posted in each housing unit. Through the use of religious service volunteers, every effort will be made to meet the needs of all recognized religions." (ECF No. 185-4, at 11). Chaplain Richard affirmed in his affidavit that he regularly spoke with Plaintiff and attempted to read and learn more about Odinism in order to assist Plaintiff. (ECF No. 185-5, at 2). Chaplain Richard asked Plaintiff to have a volunteer Odinist minister or advisor contact him in order that he could seek out religious materials or arrange visitation. *Id.* at 2. Neither Richard nor apparently Plaintiff were aware of an outside volunteer qualified to conduct Odinist services or meetings.

The Constitution "does not demand that every religious sect or group within a prison – however few in numbers – must have identical facilities or personnel." *Freeman,* 369 F.3d at 862-63 (internal citation omitted). It is not constitutionally impermissible for Defendants to consider the demand and need of a group requesting religious accommodations. *Baranowski v. Hart,* 486 F.3d 112, 123 (5th

Cir. 2007). "[A] special chapel or place of worship need not be provided for every faith regardless of size, nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." *Cruz,* 405 U.S. at 322 n.2.

In *Adkins v. Kaspar,* the Fifth Circuit held that the prison's requirement that an outside volunteer be present at religious services did not place a substantial burden on a plaintiff-prisoner's exercise of religion, because the record showed that the infrequency of religious services arose from a lack of volunteers, rather than any direct prohibition on services. 393 F.3d 559 (5th Cir. 2004); *see Baranowski,* 486 F.3d at 121-22 (rejecting challenge to volunteer policy). It is not GRCF's religious accommodation policy that imposes a burden on Plaintiff's religion, but instead a lack of volunteers, donations, and demand. Plaintiff has offered no evidence that he attempted to locate a volunteer Odinist minister or adviser. Plaintiff has not established the violation of a clearly established constitutional right or that Chaplain Richard acted with deliberate indifference to Plaintiff's religious rights. Plaintiff's First Amendment claims with respect to requests for Odinist services should be dismissed with prejudice.

Plaintiff's RLUIPA claims concerning Odinists services should also be dismissed with prejudice. In *Chance v. Tex. Dep't of Crim. Justice,* the Fifth Circuit rejected a prisoner's RLUIPA claim about the limited frequency of services that was

due to the limited number of outside volunteers, finding that the volunteer policy itself is reasonable and necessary, and "that it is the least restrictive means of furthering the prison's compelling interest in prison administration." 739 F.3d 404, 415 (5th Cir. 2013).

### 7.    Accessibility of Hygiene Products

Plaintiff alleges that his First Amendment rights were violated by Chaplain Richard administering an indigent program that provided shampoo, deodorant, and lotion to prisoners who attended two church services per month. (ECF No. 185-1, at 32). The handout containing the rules for this program provide that prisoners also had the option of attending "any class offered (i.e. discipleship, A&D, life skills, etc.)" (ECF No. 19-1), but Plaintiff contends that only religious services were offered to him because he was a George County inmate that was not in MDOC custody. Chaplain Richard disputes this and avers that Plaintiff had the option of attending non-religious life skills classes:

> That I administer a program at GCRCF for indigent inmates, which allows those inmates who do not have funds available to purchase hygiene supplies to request certain indigent supplies, and this program is completely separate from Mississippi Department of Corrections standards, which also apply to George County inmates, allowing for limited hygiene supplies while incarcerated at GCRCF and is aimed at assisting those indigent inmates;

> That this indigent program is made possible through donations of certain supplies and that there are not always supplies available to the indigent inmates because these items are received entirely by donation;

19

> That in order for indigent inmates to receive certain
> donated supplies, they must attend some sort of life skills
> class or program offered by GCRCF, or a religious service.
> Participation in such a program is required to show
> initiative on the part of the indigent inmate to show that
> they are trying to improve themselves . . . .

(ECF No. 185-5, at 1).

Warden Fairley attested in his affidavit "[t]hat the GCRCF provides soap,

toothpaste, tooth brush, toilet paper, and razor to county inmates. All other hygiene

supplies must be purchased from the commissary, or when available, can be

obtained from the chaplain's indigent supplies program." (ECF No. 185-2, at 2). The

inmate handbook is clear that inmate attendance at religious programs is

voluntary. (ECF No. 185-4, at 11).

Plaintiff does not have a clearly established constitutional right to have

shampoo, deodorant, and lotion. GCRCF provides Plaintiff with soap, and Chaplain

Richard provided Plaintiff with soap on occasion, despite the fact that Plaintiff did

not attend services or classes. The indigent program administered by Chaplain

Richard is supported by donations. Participation is voluntary. Non-religious classes

are offered. Plaintiff has not demonstrated that Chaplain Richard's sponsorship of

this program violates the First Amendment.

### 8.   Request for Yule Feast Accommodations

Plaintiff asserts a First Amendment claim against Chaplain Richard for

refusing to accommodate his requests for a Yule feast, which would entail serving

pork and mead, or a substitution honeyed water for mead, during the Twelve Days

of Yule. (ECF No. 185-1, at 37, 39). Plaintiff submits that Yule is "about like Ramadan" but is 12-days long as opposed to thirty. *Id.* at 53. Chaplain Richard denies that Plaintiff spoke with him about Yule or requested accommodations for a Yule feast. (ECF No. 185-5, at 2).[2]

Prisons are not required to respond to all individual religious dietary requests in order to comply with the First Amendment. *Baranowski v. Hart,* 486 F.3d 112, 122 (5th Cir. 2007). The Fifth Circuit has recognized that "if one such dietary request is granted, similar demands will proliferate, with two possible results: either accommodation of such demands will place an undue burden on the prison system, or the prisons would become entangled with religion while drawing fine and searching distinctions among various free exercise claimants." *Kahey v. Jones,* 836 F.2d 948, 950 (5th Cir. 1988). Plaintiff has not demonstrated the violation of a clearly established constitutional right, or deliberate indifference to his religious rights. Plaintiff's RLUIPA claim fails because Plaintiff is challenging individual, not government, action. *Garrett,* 2017 WL 128555, at *1.

### 9.    Confiscation of Legal Documents

---

[2] If this is the case, then Defendants should have moved to dismiss Plaintiff's claim for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a). Defendants did not raise failure to exhaust as a defense to any of Plaintiff's ten claims. The exhaustion requirement reduces the quantity and quality of prisoner claims and should be considered as a threshold issue. *See Porter v. Nussle,* 534 U.S. 516, 524-25 (2002); *Dillon v. Rogers,* 596 F.3d 260, 272 (5th Cir. 2010). GCRCF has an administrative grievance procedure, but it is not apparent that it was enforced with respect to Plaintiff's many complaints.

Plaintiff submits that legal papers were confiscated from his cell "at various times by Cavender, Martinez, Orris, Lt. Schultz, and Sgt. Davis," none of whom are Defendants. (ECF No. 14, at 3-4). Plaintiff acknowledged at the omnibus hearing that the papers were taken due to a prison rule that only allowed a prisoner to maintain six inches of documents in his cell. (ECF No. 185-1, at 29-31). Plaintiff admitted that the papers taken were locked in a storage room, and he could request access. *Id.* at 29-31, 51-52. Plaintiff has not demonstrated a cognizable claim with respect to his legal papers.

### 10. Conspiracy

Defendants submit that Plaintiff is alleging a claim for conspiracy based on his belief that items were confiscated from his cell in order to fabricate a criminal case against him. To the extent that Plaintiff is asserting this claim, the Court agrees with Defendants that the claim is barred by *Heck v. Humphrey,* 512 U.S. 477 (1994) because Plaintiff's conviction has not been overturned.

### CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 173) is **DENIED**.

**IT IS, FURTHER, ORDERED** that Plaintiff's Motion for Suspect Classification (ECF No. 176) is **DENIED**. The legal standards governing Plaintiff's claims were discussed in this Memorandum Opinion and Order.

**IT IS, FURTHER, ORDERED** that Plaintiff's Motion for Turner Test Analysis (ECF No. 177) is **DENIED**. The legal standards governing Plaintiff's claims, included *Turner v. Safley,* 482 U.S. 78 (1987), were discussed in this Memorandum Opinion and Order.

**IT IS, FURTHER, ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 185) is **GRANTED**, and Plaintiff's claims dismissed with prejudice.

**IT IS, FURTHER, ORDERED** that Plaintiff's Motion to Produce Computer Kiosk Inmate Request (ECF No. 189) is **DENIED**. The request for discovery is denied as untimely.

**SO ORDERED AND ADJUDGED**, this the 31st day of March, 2017.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE

23